FILED
SUPERIOR COURT
OF GUAM

CLERK OF COURT

# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM, )
                                         )
         vs.                          )
                                         )
CANDIDO STEVEN TAMAN,           )
                                         )
         Defendant.               )
_____ )

**CRIMINAL CASE NO. CM1183-11**

**DECISION AND ORDER**

## INTRODUCTION

This matter came before the Honorable James L. Canto II on Defendant's motion to suppress, filed September 27, 2012. Oral arguments were heard on October 15, 2012. Assistant Attorney General Gabrielle L. Rossi appeared on behalf of the Government and Assistant Public Defender Suresh Sampath represented Defendant. On December 20, 2012, the Court issued a Decision and Order granting Defendant's motion to suppress. On November 8, 2013, the Supreme Court of Guam reversed the Court's decision and remanded the matter for the Court to determine whether Defendant's motion should be granted after a review of the factual record consistent with the Supreme Court of Guam's interpretation of Guam's Stop and Frisk Act. On February 14, 2014, the Government, the party having the burden of proof for the motion, filed a notice that it relies upon the evidence presented at the initial suppression hearing for purposes of determining the remanded issues. Having considered the parties' briefs, oral arguments, the applicable law, and *People v. Taman*, 2013 Guam 22, the Court now issues the following Decision and Order.

## BACKGROUND

Defendant is charged with driving under the influence of alcohol and driving without a license based upon the following alleged events. On November 25, 2011, Guam Police Officer Jesse J. Mendiola responded to the scene of Defendant's traffic accident. (Testimony of Jesse J. Mendiola, Record Log at 2:59, Oct. 15, 2012). Officer Mendiola stopped and questioned Defendant about the accident at approximately 2:32 a.m. *Id.* Officer Mendiola observed that

Defendant had bloodshot, watery eyes, slurred speech and smelled of alcohol. *Id. At* 2:37 a.m., Defendant affirmed that he consumed alcohol before his accident, but he could not remember how much beer he had to drink. *Id.*

At 2:45 a.m., Officer Mendiola asked Defendant to participate in a standardized filed sobriety test. *Id.* Defendant failed the sobriety test and was placed under arrest in handcuffs at some time near 3:00 a.m. *Id.* Defendant did not have his driver's license with him. *Id.* Defendant was transported to the Precinct Station where he was advised of his rights which he waived by signing a custodial interrogation form before he made statements to the police. *Id.*

On September 27, 2012, Defendant moved to suppress all evidence obtained from the investigative detention because it lasted longer than fifteen (15) minutes in violation of 8 GCA § 30.30. Defendant asserted that his initial detention was an unreasonable seizure and that all evidence obtained during or as a result of the seizure must be suppressed.

The Government opposed suppression on the bases that: 1) a detention did not occur; (2) Defendant consented to an extended detention when he participated in field sobriety tests; 3) probable cause to arrest appeared before 15 minutes of alleged detention; 4) suppression should be limited to evidence obtained after 15 minutes of detention and before arrest; and 5) evidence obtained after the voluntary waiver of rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) is attenuated from an unreasonable detention and admissible.

On December 20, 2012, the Court issued a Decision and Order granting Defendant's motion to suppress and holding that all evidence obtained from the onset of detention until his waiver of custodial interrogation rights shall not be admissible against Defendant. (Dec. & Order, 9, Dec. 20, 2012).

On November 8, 2013, the Supreme Court of Guam in *People v. Taman*, 2013 Guam 22 issued an opinion clarifying 8 GCA §30.30, the "15 minute rule," of Guam's Stop and Frisk Act. The Supreme Court of Guam held, as a matter of law, that voluntary consent tolls the 15 minute rule and that the development of probable cause obviates that fifteen minute limit imposed by Guam's Stop and Frisk Act on investigative detentions that are supported by reasonable suspicion. *People v. Taman*, 2013 Guam 22 ¶¶ 15, 27.

## DISCUSSION

### I. The Stop and Frisk Statutes

The Fourth Amendment permits brief investigative detentions that are based upon a reasonable suspicion of illegal conduct. *People v. Johnson*, 1997 Guam 9 ¶ 4 (*citing Terry v. Ohio*, 392 U.S. 1 (1968)). This principle is codified in the "Stop and Frisk" statutes at 8 GCA Chapter 30. *See People v. Cundiff*, 2006 Guam 12 ¶ 40.

Title 8 GCA § 30.10 states:

> Whenever a peace officer encounters any person under circumstances which reasonably indicate that such person has committed, is committing or is about to commit a criminal offense, the peace officer may detain such person.

Title 8 GCA § 30.20 states:

> Detention pursuant to § 30.10 shall be for the purpose of ascertaining the identity of the person detained and the circumstances surrounding his presence abroad which lead the officer to believe that he had committed, was committing, or was about to commit a criminal offense, but such person shall not be compelled to answer any inquiry of the peace officer.

Title 8 GCA § 30.30 states:

> No person shall be detained under the provisions of § 30.10 longer than is reasonably necessary to effect the purposes of that section, and in no event longer than fifteen (15) minutes. Such detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.

Title 8 GCA § 30.40 states:

> If at any time after the onset of the detention authorized by § 30.10, probable cause for arrest of the person shall appear, the person shall be arrested. If after an inquiry into the circumstances which prompted the detention, no probable cause for the arrest of the person shall appear, he shall be released.

8 GCA §§ 30.10-30.40 (2005).

Thus under Guam law, a police officer having a reasonable suspicion regarding criminal activity by a particular individual may detain that person to investigate said suspected criminal activity. 8 GCA §§ 30.10-30.20 (2005). When this investigative detention reveals probable cause for arrest, "the person shall be arrested." 8 GCA § 30.40 (2005). Although "in no event [shall a person be detained] longer than fifteen (15) minutes," voluntary consent will toll the

time limit and the appearance of probable cause to arrest obviates the fifteen minute time limit. 8 GCA § 30.30 (2005); *Taman*, 2013 Guam 22 ¶ 30.

In order to apply this rule to the present case, the Court must first determine whether there was an investigative detention. Under Guam law, "a person has been seized under the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Cundiff*, 2006 Guam 12 at ¶ 21 (*quoting United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980)). An investigative detention under 8 GCA Chapter 30 is consistent with a Fourth Amendment seizure. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 40; *Terry*, 392 U.S. at 16 ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). For this reason, an investigative detention occurs when a reasonable person would believe he is not free to leave under the circumstances. In the Decision & Order issued on December 20, 2012, the Court found that Defendant was detained by Officer Mendiola under 8 GCA Chapter 30 at 2:32 a.m. because he could not reasonably believe that he was free to disregard Officer Mendiola and walk away without his identification. (Dec. & Order, 6, Dec. 20, 2012).

Having determined that there was an investigative detention, the Court must next determine whether Defendant consented to any continued police contact beyond the initial 15 minutes of his detention. If Defendant gave voluntary consent to continued police contact, the 15-minute time limit is tolled. *Taman*, 2013 Guam 22 ¶ 15. However, "absent obtaining voluntary consent or establishing probable cause within fifteen minutes from the onset of an investigative detention, an investigative detention exceeding the statutory limit violates Guam's Stop and Frisk Act." *Id.* at ¶ 31.

## II.    Voluntary Consent

The Supreme Court of Guam held that voluntary consent tolls the 15 minute rule. *Taman*, 2013 Guam 22 ¶ 15. "If consent is given during either a lawful encounter or a lawful detention, ... the validity of the consent turns on whether it was voluntarily given." *People v.*

*Chargualaf*, 2001 Guam 1 ¶ 15. The Government has the burden to prove by a preponderance of the evidence that a defendant gave consent voluntarily, and voluntariness is determined from the totality of the circumstances. *Id.* at ¶ 25. To determine whether consent was given voluntarily, the Supreme Court of Guam has instructed to consider the following factors:

> 1) whether the defendant was detained and the length of time of the questioning; 2) whether the defendant was threatened or intimidated by the police; 3) whether the defendant relied on misrepresentations or promises made by the police; 4) whether the person was in custody or under arrest when the consent was given; 5) whether the person was in a public or a secluded place; and 6) whether the defendant objected to the search.

*Id.* (*citing People v. Santos*, 1999 Guam 1 ¶ 36).

In this case, Officer Mendiola asked Defendant "[a]re you willing to ... submit to a standardized field sobriety test" and Defendant agreed to the test before he was arrested. (Tr. of Hearing on Mot. Suppress, 12-13, Oct. 15, 2012). Officer Mendiola indicated that the test was voluntary and did not threaten Defendant in any way. *Id.* at 12. He did not place his hands on Defendant as to physically prevent him from leaving. *Id.* at 13. The test was administered at approximately 2:45 a.m., 13 minutes from the initial contact. *Id.* The test was conducted at the scene of the accident at the intersection of Route 1 and 14, a public place. *Id.* at 10-13. The test lasted for approximately 15 minutes and concluded at 3:00 a.m. *Id.* at 23.

Considering that (1) Defendant was detained and the test lasted for approximately 15 minutes; (2) Defendant was neither threatened nor intimidated by Officer Mendiola, (3) no evidence was presented to show that Defendant relied on misrepresentations or promises made by Officer Mendiola, (4) Defendant was neither in custody nor under arrest when the consent was given; (5) Defendant was in a public place; and (6) Defendant consented to the search; the Court finds that Defendant gave voluntary consent to the standardized field sobriety test. *Chargualaf*, 2001 Guam 1 ¶ 15. Furthermore, Defendant voluntarily consented to the test within 15 minutes of the initial detention. Therefore, Defendant's voluntary consent tolled the 15 minute rule. *Taman*, 2013 Guam 22 ¶ 15. Because Defendant was arrested after the completion of the standardized field sobriety test, the Court holds that there was no violation of the 15 minute rule.

## III.  Probable Cause

Out of an abundance of caution, the Court will analyze whether police had probable cause to arrest Defendant. This is because, despite the tolling of the 15-minute rule by Defendant's consent to a longer police detention, the police officer must at some reasonable point in time ascertain sufficient probable cause to legally justify arresting the Defendant. *See* 8 GCA §20.15. To determine if a police officer had probable cause to make an arrest, a court must determine "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citations omitted). Thus, the existence of probable cause to arrest requires a determination of whether the arresting officer had "reasonably trustworthy information." *People v. Cundiff*, 2006 Guam 12 ¶ 27.

In this case, Officer Mendiola responded to the scene of Defendant's vehicle collision. (Tr. of Hearing on Mot. Suppress, 10, Oct. 15, 2012). At approximately 2:32 a.m., Officer Mendiola ascertained that Defendant was driving one of the vehicles involved in the collision, and he stopped and questioned Defendant about that collision. Id. at 10-11. Within five minutes, Officer Mendiola smelled the odor of an intoxicating beverage coming from Defendant's mouth and his person. Id. During this time, Officer Mendiola also observed Defendant's bloodshot and watery eyes, and he noticed that Defendant's speech was slurred and mumbled. Id. When Officer Mendiola asked Defendant if he had anything to drink, Defendant stated as follows: "Yeah. Even if I did, I couldn't tell you how much Bud Light I put down." Id. at 12. Officer Mendiola asked this question before the Standardized Field Sobriety Test ("SFST"), which was conducted at 2:45 a.m. Id. at 12-13. While giving Defendant instructions on how to perform the SFST, Officer Mendiola observed Defendant swaying left to right and back and forth. Id. at 13. When Officer Mendiola administered the horizontal gaze nystagmus portion of the SFST, the officer found Defendant to exhibit a lack of smooth pursuit, nystagmus prior to 45 degrees, and nystagmus at maximum deviation, from which the officer concluded Defendant was intoxicated. Id.

Based on the evidence adduced at the suppression hearing, the Court finds that the Government did satisfy its burden to prove that Officer Mendiola had probable cause to arrest Defendant for suspicion of driving while under the influence of alcohol. In this case, Defendant is being charged for driving while under the influence of alcohol, as a misdemeanor, under 16 GCA § 18102 (a), which provides as follows:

> It is unlawful for any person, while under the influence of an alcoholic beverage or any controlled substance, or under the combined influence of an alcoholic beverage and any controlled substance, to operate or be in physical control of a motor vehicle.

16 GCA § 18102 (a) (2005).

Driving under the influence or while intoxicated is defined as follows:

> (a) Driving under the influence ("DUI") or while intoxicated means any person driving a vehicle under the influence of an alcoholic beverage or a controlled substance or a combination thereof, when as a result of consuming such alcoholic beverage or controlled substance or the combination thereof, his or her physical or mental abilities are impaired to such a degree that he or she no longer has the ability to drive a vehicle with the caution characteristics [sic] of a sober person of ordinary prudence, under the same or similar circumstance, and includes any person operating or in actual physical control of a motor vehicle who has eight one-hundredths of one percent (0.08%) or more, by weight, of alcohol in his or her blood.

16 GCA §18101 (a) (2005).

Therefore, for probable cause to have existed, Officer Mendiola must have had reasonably trustworthy information indicating that Defendant was driving a vehicle under the influence of an alcoholic beverage where his physical or mental abilities were impaired to such a degree that he no longer had the ability to drive a vehicle with that degree of caution which is characteristic of a sober person of ordinary prudence. *Id.; Cundiff,* 2006 Guam 12 ¶ 27.

Officer Mendiola identified Defendant as having operated a vehicle that was involved in a vehicle-to-vehicle collision. Officer Mendiola observed Defendant to display an aggregate of physical indicators of alcohol intoxication, including bloodshot, watery eyes; slurred speech; swaying while standing; and horizontal gaze nystagmus. Additionally, Defendant admitted to

having consumed alcoholic beverages, and the officer smelled the odor of alcoholic beverage on his breath. The combination of these factors is sufficient to constitute reasonably trustworthy information to arrest for driving while under the influence of alcohol. Those factors show Defendant's physical and mental abilities were most likely impaired to such a degree that he no longer had the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence. 16 GCA §18101 (a) (2005); *Cundiff*, 2006 Guam 12 ¶ 27. For these reasons, the Court finds that probable cause to arrest Defendant emerged during Defendant's detention, and this detention was reasonable in its scope and duration.

For the above reasons, Defendant's motion to suppress is denied.

///

///

///

## CONCLUSION

Based upon the foregoing, Defendant's motion to suppress is hereby DENIED. This matter is set for trial setting on May 1, 2014.

**SO ORDERED** this _22ND_ day of April, 2014.

**HON. JAMES L. CANTO II**
**Judge, Superior Court of Guam**

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the original hereto was placed in the court box of:
AG , PD
DHC
Date: 4/22/14 Time: 4:25 PM
Deputy Clerk, Superior Court of Guam